### SHAVER and others *against* RADLEY and others.

If a trustee by *implication*, is to be affected by an equity, that equity must be pursued within a reasonable time.

Where the defendant, a *bona fide* purchaser without notice, and those under whom he claimed, had been in possession of land, above *twenty-six* years, before the plaintiffs filed their bill to enforce their claim, founded on an *implied* trust, the bill was dismissed, but without costs, under the circumstances of the case.

A defendant who answered an original bill, after a decree against him, petitioned for a *rehearing*, which was granted, and the plaintiffs filed a *bill of revivor and supplement*, to which the defendant answered and *disclaimed*, he was held entitled to *costs*, on the dismissal of the bill.

*February 9th.*  THE original bill, filed *March* 8th, 1799, stated, that *Andrew Makaus* was seized of eighty acres of land in the *Van Baal* patent, in the manor of *Rensselaer.* That *A. M.*, by his will, dated *August* 15th, 1749, devised one half of his land to his son *Peter*, in fee, and the other half to his daughter *Annatie.* The testator died, and his son, also, died, soon after. *Annatie* married *John Radley*, and their children, and the children of another daughter, *Maritie*, who married *Abraham Bradt*, were plaintiffs. *Elizabeth*, another daughter of the testator, died intestate. A dispute arose about the boundaries of the *Van Baal* patent, which was submitted by the proprietor of that patent, *Van Rensselaer*, to commissioners, in 1774, who awarded the said farm to *S. Van Rensselaer*, the proprietor of the manor, who was bound by a stipulation in the submission, to confirm the title of the grantees under the *Van Baal* patent, subject to the like rents and conditions used in the manor leases. In pursuance of the award, the proprietor of *Van Baal's* patent, on the 14th of *March*, 1789, assigned the counterpart of the lease to the testator, in fee, to the pro-

prietor of the manor of *R.* The original lease to the testator, was dated *October* 19th, 1732. The two devisees took possession of the farm, and enjoyed it, until the death of *Peter;* and *Annatie* continued in possession until her death, which was long before the filing of the bill. Her husband, *John Radley,* who survived her, married a second wife, by whom he had issue, and who are the defendants. The bill further stated, that *John Radley,* having obtained the title deeds and will of *A. M.,* destroyed them. That he continued in possession until his death, in 1785, and that the defendants, or some of them, have since continued in possession. That *J. R.,* or his last wife, or the defendants, after their death, by false suggestions that they were the legal possessors, obtained from the proprietor of the manor of *R.,* a deed, in fee, for a tract of land, including the *eighty acres,* subject to an annual rent, &c.; and under that deed keep possession of the said eighty acres, and refuse to produce or to admit the title deeds and the will of *A. M.,* so that the plaintiffs are unable to recover the farm or rents at law. *Prayer,* for discovery and relief.

The four defendants, on the 2d of *September,* 1799, put in their answer, stating, among other things, that they did not know, or believe, that *A. M.* died seised, or made a will, &c. and set forth their title as derived under the will of their father.

They denied the suppression of the will. They admit, that in 1773 the widow of the proprietor of the manor of *R.,* gave a lease to their father, of 100 acres of land, including the eighty acres, for thirteen years; and that, in 1791, the present proprietor of the manor, gave to their mother a new lease, for 220 acres, including the eighty acres, in fee, subject to an annual rent of thirty skipples of wheat, &c. They denied, that any false suggestions were made, &c.

Witnesses were examined, and publication passed, and the cause brought to a hearing, before the late Chancellor,

1820.

SHAVER
v.
RADLEY.

in 1813, when it was *decreed*, that the defendants, and their wives, should release to the plaintiffs, two undivided third parts of the eighty acres, and deliver possession thereof; and a reference was made to a Master, to state an account of the rents and profits received by the defendants.

On the 19th of *September*, 1814, three of the defendants, one having died in the mean time, presented a *petition* for a rehearing, in which, among other things, they stated, that the property in the eighty acres of land, were vested in the defendant, *William Radley*, and the other defendants had no interest, &c.

A *rehearing* was ordered; and the defendants had leave to amend their answer, and the plaintiffs had leave to file a *bill of revivor and supplement;* the depositions taken, to be evidence, and the motion as to costs of the petition reserved, &c.

On the 1st of *August*, 1816, the plaintiffs filed their bill of *revivor and supplement,* stating additional plaintiffs, and various changes by death and marriage, and deducing title to the plaintiffs. They repeated the charges in the original bill, &c.

*William Radley* put in his separate answer to the bill of revivor, &c. And the other two defendants answered, and disclaimed, and prayed for costs.

The material facts appearing in the pleadings and proofs, which were very voluminous, are sufficiently stated in the opinion of the Court.

*Van Vechten*, for the plaintiffs.

*Burr*, for the defendants.

THE CHANCELLLOR. 1. If the land in question had belonged to the *Van Baal* patent, and not to the manor of *Rensselaer*, and *Andrew Makaus* had been legally seized in fee, at the time of his death, the plaintiffs, who are chil-

+ load

dren of *Annatie Radley*, would have shown a title to a moiety of the premises.

By the will of *Makanse*, (and of the authenticity of which there can remain no doubt,) the one half of the farm was devised to his son *Peter*, and the other half to his daughter *Annatie*. There is no evidence that *Annatie* ever parted with her right, but there is ground to presume that *Peter* conveyed his interest to *Johannis Radley*, the husband of *Annatie*, and father of the defendants. There is a certificate signed by *Mary* and *Elizabeth*, the two other daughters of the testator, and dated in 1759, by which they and their husbands acknowledge to have received of *Johannis Radley* their full demand upon the farm, and they assign over all their right and title to him. By the will, those two daughters were entitled to a legacy of ten pounds each; the one legacy payable by *Peter*, and the other by *Annatie*. These legacies, which were paid by *Radley*, in 1759, were paid on behalf of *Peter*, and of his wife *Annatie*, and how came he to pay the legacy chargeable upon *Peter*? We find, also, by a receipt dated in 1756, that *Johannis Radley* paid a small debt of *A. Lansing*, against *Peter Makanse*; and by another receipt, of the date of *February*, 1763, he paid to *Dow Fonda*, a debt due from *Andrew Makanse*; and by a receipt, of *May*, 1763, he paid another such debt to *Mary Bett*; and by a receipt of 1768, he paid another such debt to *A. Yates*; and by another receipt, of 1777, he paid another such debt to *Jacob Roseboom*. A number of aged witnesses testify to traditional information and belief, that *Johannis Radley* acquired the farm by purchase, and assumed the debts of the testator; and though they do not speak with precision, their testimony shows that there was an ancient and generally received impression in the neighbourhood, to that effect. It appears, also, that *Johannis Radley* continued in possession, from the time he first entered, not long after the death of *Makanse*, until his death, in 1785, a

period of upwards of thirty years. I think we might safely presume, under these facts and circumstances, that a conveyance of *Peter's* moiety of the farm, was made to him, and that the deed has been lost. As to the moiety of *Annatie*, his continuance in possession until his death, would be perfectly consistent with her right, and that of her children, inasmuch, as he was entitled to such possession, as tenant by the curtesy.

Assuming, then, the *Makanse* title to have been good, I should be induced to think that the plaintiffs, who are the children or descendants of *Annatie*, have shown a title to a moiety of the premises, and that the plaintiffs, who are the children or descendants of *Maria*, have failed in establishing any title, legal or equitable.

2. But it appears, from the case, that the *Makanse* title was without foundation ; that the lands in question belonged to the proprietor of the manor of *Rensselaer*, and that the defendant, *William Radley*, is lawfully possessed of a lease, in fee, under the true owner; and the only point in the case is, whether the facts will raise a trust, by construction, as to a moiety of the premises, in favour of the representatives of *Annatie Radley*.

The charge in the bill, that the parents of the defendant, *William Radley*, suppressed the will and title deeds of *Andrew Makanse*, and obtained a title under *Van Rensselaer*, by false suggestions, is not supported by proof. It appears that disputes and controversies existed between the proprietors under the *Van Baal* and *Van Rensselaer* patents, and ejectment suits had been brought on each side. In *July*, 1774, the proprietors submitted the dispute to arbitration, and by the award of the referees, in *May*, 1775, the lands now in question were declared to belong to the manor of *Rensselaer*. It is suggested, that, by the terms of the submission to arbitration, the title of the grantees under the *Van Baal* patent was to be confirmed, under the like rents and conditions, in case those grantees should fall within the

manor of *Rensselaer*. But neither the defendants, nor their parents, (*Johannis Radley*, and his second wife, *Catharine*,) were parties to that submission, and there is no evidence that the knowledge of such a stipulation ever came to them, or either of them, and the fact of such knowledge is denied in the answer. When *Johannis Radley* obtained a lease, in 1773, from Mrs. *Van Rensselaer*, for thirteen years, he acquired a title by purchase from the true owner, upon the usual covenants and conditions contained in the printed leases, and upon a yearly rent of fifteen skipples of wheat. This appears to have been a fair purchase, and without any ground upon which to raise a trust, in favour of the plaintiffs, under *Makanse*. The title under *Makanse* was denied, and resisted, and proved, afterwards, to have been null and void from the beginning. It was a safe and necessary purchase under the rightful owner; and the suggestion of a fraudulent attornment is not supported. If there was any fraud, it was committed against the proprietors of the *Van Baal* patent, who were seised of the rents under the original lease to *Makanse;* and they would be concluded from the suggestion, since they submitted their title to a tribunal which decided that they had none. The taking a lease under the true owner, was a *tabula in naufragio*. His tenancy by the curtesy was unsound and worthless; and the mere fact of his being an occupant under such a pretension, would not render him a trustee under the new lease. The claimants, under *Makanse*, had no title, in law or equity, to a confirmation of their lease by the true owner, unless under some covenant to that effect, and to that the *Radleys* were strangers. It does not appear that the lease was given to *Johannis Radley*, upon any other ground than that of his being a person in actual possession, which, of itself, gave him no legal or equitable right to the lease. He died in possession, before the expiration of the lease; and sometime after his death, his widow, *Catharine Radley*, procured from *Van Rensselaer*, in 1791, a lease in fee, subject to a variety of

1820.
SHAVER
v.
RADLEY.

covenants and conditions; and among others, to the payment of an annual rent of thirty skipples of wheat. This lease, in fee, to *Catharine Radley*, was not in pursuance of any stipulation in the submission to arbitration. There is a great difference, both as to the quantity of land, and as to the rents and covenants, between this lease and the one in 1732, to *Makanse*, the counterpart of which had been assigned to *Van Rensselaer*, in 1789. There is no analogy between them. This is to be considered, not as the confirmation of the same grant, but as a new and original purchase made by the grantee, in good faith, and without knowledge of any legal obligation in *Van Rensselaer* to give it. She afterwards, conveyed the premises to *Rybert Radley*, and he to the defendant, *William Radley*, who holds as a *bona fide* purchaser, without notice of any trust arising from the terms of submission to arbitration, and without being chargeable with any fraud that might have been imputable to his father.

The interval between the time when *Johannis Radley* took a title under *Van Rensselaer*, and the filing of the bill, was twenty-six years; and during all that time, the land was held under *Van Rensselaer*, without notice of any equitable claim, which the grantees, under the *Van Baal* patent, might have had, arising from the submission to arbitration. I do not see that there is any principle of the Court to warrant the deduction of a constructive trust, to be enforced against the defendant. If a trustee by implication, is to be affected by an equity, that equity must be pursued within a reasonable time. (*Townshend* v. *Townshend*, 1 *Cox's Cases*, 28. and see, also, the cases referred to in 3 *Johns. Ch. Cas.* 216.) Here the defendant stands in the character of a *bona fide* purchaser, without notice, and he sets up such a purchase, and the occupation of the land by himself, and those under whom he holds, for a period of twenty-six years before the filing of the bill. I am of opinion, that he ought

not now to be disturbed, under the peculiar and extraordinary circumstances of the claim.

The bill must, accordingly, be dismissed; but considering the protracted nature of this litigation, arising from the acts and *laches* of the defendants, and the circumstances of hardship and misfortune which characterise the lost claims and equity of the children of *Annatie Radley*, I shall follow the precedent of the case just cited, and dismiss the bill without costs.

The two defendants who have, in their answer to the bill of revivor and supplement, disclaimed all interest in the premises, might have been entitled to costs, if that last bill had been the commencement of the suit. But when it is recollected, that in their answer to the original bill, there was no such disclaimer, and that a decree, after a hearing on the merits, had been pronounced against them, and that on their petition for a rehearing, they were indulged with the privilege of amending their answer, and might justly be chargeable with costs of the preceding part of the suit; they can have no just right to the costs of the last stage of the suit, if they are permitted to be exempted from the payment of the costs of the former stage of it. The bill, therefore, as to all the defendants, is dismissed without costs.

*Decree accordingly.*

1820.

SHAVER
v.
RADLEY.

On dismissal of bill, *costs* denied to defendants, on the ground of *laches* on their part, and hardship on the part of the plaintiffs.

A defendant who answered an original bill, after a decree against him, petitioned for a *rehearing*, which was granted; and the plaintiffs filed a *bill of revivor and supplement*, to which the defendant answered and *disclaimed;* he was held not entitled to *costs*, on the dismissal of the bill, but was exempted from costs under the first decree.